UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDELMIRA GUERRERO,
*individually, and on behalf of all others similarly situated,*

                Plaintiff,

       – against –

ELLUSIONIST.COM, INC.,

                Defendant.

**OPINION & ORDER**

22-cv-2465 (ER)

RAMOS, D.J.:

    Edelmira Guerrero, a visually impaired person, brings this putative class action for declaratory relief, injunctive relief, and monetary damages against Ellusionist.com, Inc. for violations of the Americans with Disabilities Act of 1990 ("ADA") and the New York City Human Rights Law ("NYCHRL"), alleging denial of equal access to a website operated by Ellusionist. Doc. 21. Before the Court is Ellusionist's motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure Rule 12(b)(6). Doc. 25 at 5. For the reasons set forth below, the motion to dismiss is GRANTED in part and DENIED in part.

**I.    BACKGROUND**

    Guerrero is a resident of Bronx, New York and is visually impaired. Doc. 21 ¶ 14. Guerrero uses NonVisual Desktop Access ("NVDA") screen reading software to navigate websites on the internet. *Id.* ¶ 24. Ellusionist is a corporation registered in California, and it conducts business in New York through its website, ellusionist.com ("the website"). *Id.* ¶¶ 2, 15. Ellusionist designs and sells cards that are used for magic tricks and card games. *Id.* ¶ 2.

    Guerrero alleges that Ellusionist failed to make the website accessible to the visually impaired, thereby denying her access to the goods available on the website. *Id.* ¶

1. Guerrero alleges that on four occasions—February 1, March 20, July 24, and July 26, 2022—she browsed and attempted to purchase a deck of "Queen Bee Luxury-pressed E7" cards. *Id.* ¶¶ 2–3.  Yet, because of the accessibility barriers on the website, which Ellusionist has failed to cure as of the date of the filing of the first amended complaint ("FAC"), Guerrero could not buy the cards. *Id.* ¶ 5.

Guerrero filed this action on March 27, 2022, seeking injunctive relief, as well as compensatory and punitive damages against Ellusionist. *Id.* ¶ 7.  Pursuant to the parties' stipulation entered by the Court on July 27, 2022, Doc. 20, Guerrero filed a FAC on July 28, 2022.  Doc. 21.  On September 30, 2022, Ellusionist filed a motion to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) for failure to state a claim. Doc. 24.

## II.   LEGAL STANDARD

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Nielson v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).  The Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id*. at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citing *Twombly*, 550 U.S. 556).  The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  If the plaintiff has not "nudged [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Twombly,* 550 U.S. at 570; *see Iqbal*, 556 U.S. at 680.

2

The question in a Rule 12 motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)).  "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits'" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

### III. DISCUSSION

#### A. Failure to State a Claim

Guerrero alleges that Ellusionist violated Title III of the ADA, 42 U.S.C. § 12101 *et seq.*, and the NYCHRL, N.Y.C. Administrative Code §§ 8-101 *et seq.*, by failing to provide equal access to blind and visually-impaired consumers on its website.  Doc. 21 ¶ 6.  To successfully state a claim under Title III, a plaintiff must establish "that (1) he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA." *Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 368 (2d. Cir. 2008) (citing *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d. Cir. 2008)).  The ADA defines the term "public accommodation" in a list of twelve categories of private entities.[1]  *See* 42 U.S.C. § 12181(7).

---

[1] The following private entities are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce—

(A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;

(B) a restaurant, bar, or other establishment serving food or drink;

(C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;

(D) an auditorium, convention center, lecture hall, or other place of public gathering;

Ellusionist does not dispute that Guerrero has sufficiently alleged that she is visually impaired and thus falls into the ADA's definition of disability. Doc. 25 at 6; Doc. 21 ¶ 2. Ellusionist's principal argument is that its website is not a "place of public accommodation" under the ADA. Doc. 25 at 7–8. Ellusionist argues that the list of places provided in Title III that qualify as places of public accommodation include only physical locations, not websites. *Id.*; *see also* 42 U.S.C. § 12181(7). It further argues that websites do not fit into any of the twelve statutory categories. *Id*. Guerrero argues that websites are covered because in addition to listing physical places such as restaurants and hotels, other entities like "travel services" and "other sales or retail establishments" can include websites and non-physical businesses. Doc. 29 at 11. Ellusionist responds that the doctrine of *noscitur a sociis* would support a finding that the ADA covers only physical spaces because "travel services" and "other sales or retail establishments" should be interpreted in the context of the other entities that are listed, which are all physical spaces. Doc. 25 at 13.

Neither the Supreme Court nor the Second Circuit has addressed the issue of whether stand-alone websites are "places of public accommodation." *Chalas v. Pork King Good*, No. 22 Civ. 03894 (ER), 2023 WL 3293639, at *2 (S.D.N.Y. May 5, 2023).

---

(E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;

(F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;

(G) a terminal, depot, or other station used for specified public transportation;

(H) a museum, library, gallery, or other place of public display or collection;

(I) a park, zoo, amusement park, or other place of recreation;

(J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;

(K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and

(L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

42 U.S.C. § 12181(7).

Ellusionist urges the Court to follow the rulings of the Third and the Sixth Circuits, which have held that for "discrimination under Title III to be found, there must be a 'nexus' between the discriminatory conduct and the goods and services of a *physical location*." Doc. 25 at 12 (emphasis added); *see Ford v. Schering-Plough Corp.*, 145 F.3d 601, 612–13 (3d Cir. 1998); *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1011 (6th Cir. 1997). Moreover, the Ninth and the Eleventh Circuits have specifically held that websites are not places of public accommodation for purposes of the ADA. *See Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 905 (9th Cir. 2019) (holding that defendant's website is a place of public accommodation *only* because it *facilitates* access to the goods and services of an actual physical place of public accommodation) (emphasis added); *Gil v. Winn-Dixie Stores, Inc.*, 993 F.3d 1266, 1277 (11th Cir. 2021) ("No intangible places or spaces, such as websites, are listed [in the ADA]."). However, the First and Seventh Circuits have rejected this interpretation and have instead held that the ADA applies not only to physical spaces, but also to non-physical ones, such as websites. *See Carparts Distribution Center, Inc. v. Automotive Wholesaler's Ass'n of New England, Inc.*, 37 F.3d 12, 19 (1st Cir. 1994) (determining that "service establishments" under the ADA include providers of services which do not require actual physical structure); *see also Doe v. Mut. of Omaha Ins. Co.*, 179 F.3d 557, 559 (7th Cir. 1999) (holding that no physical space is required so long as it is open to the public).

While there is also a split within the Second Circuit, courts in this District that have extended Title III protections to stand-alone websites have done so, by relying on an analogous Second Circuit decision, *Pallozzi v. Allstate Life Ins. Co.*, 198 F.3d 28 (2d Cir. 1999), *opinion amended on denial of reh'g*, 204 F.3d 392 (2d Cir. 2000); *see also* Doc. 29 at 10–11. In *Pallozzi*, the defendant insurance company refused to sell plaintiffs a joint life insurance policy because of their mental disabilities. The Second Circuit emphasized that the ADA protected more than mere physical access because Title III "mandate[d] that the disabled be accorded 'full and equal enjoyment of the goods, [and] services . . . of any

5

place of public accommodation.'" *Pallozzi*, 198 F.3d at 32.  Several courts in this District have interpreted that language mean that "commercial websites qualify as places of public accommodation independent of a nexus to a physical space."  *See, e.g.*, *Pork King Good*, 2023 WL 3293639, at *2 (quoting *Weekes v. Outdoor Gear Exch., Inc.*, No. 22 Civ. 1283 (ER), 2023 WL 2368989, at *5 (S.D.N.Y. Mar. 6, 2023)); *see also Monegro v. I-Blades, Inc.*, No. 21 Civ. 3093 (GBD) (SN), 2023 WL 2499718, at *3 (S.D.N.Y. Mar. 14, 2023); *Loadholt v. Shirtspace*, No. 22 Civ. 2870 (ALC), 2023 WL 2368972, at *3 (S.D.N.Y. Mar. 6, 2023); *Winegard v. Crain Commc'ns, Inc.*, No. 20 Civ. 1509 (AJN), 2021 WL 1198960, at *2 (S.D.N.Y. Mar. 30, 2021).

Ellusionist relies on *Winegard v. Newsday LLC*, a recent case in the Eastern District of New York that follows the minority view in the Second Circuit that the ADA does not extend Title III protections to stand-alone websites.  *Winegard v. Newsday LLC*, 556 F. Supp. 3d 173, 174 (E.D.N.Y. 2021).  In *Winegard*, a deaf individual filed suit against Newsday—a local Long Island newspaper—for operating a website without adequate accessibility features for deaf persons.  *Id.* at 174.  The *Winegard* Court interpreted *Pallozzi* as requiring a physical place as a condition precedent.  Consequently, only a website that sold "the same 'goods and services' as the business's brick-and-mortar operation" could be considered a place of public accommodation.  *Id.* at 181; *see also Martinez v. MyLife.com, Inc.*, No. 21 Civ. 4779 (BMC), 2021 WL 5052745, at *2 (E.D.N.Y. Nov. 1, 2021); *Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381, 389 (E.D.N.Y. 2017).

As the foregoing discussion makes clear, the good faith difference of opinion among so many courts suggests that the statute is at least ambiguous on the issue of whether stand-alone websites qualify as places of public accommodation.  *See Martinez v. Gutsy LLC*, No. 22 Civ. 409 (NGG) (RLM), 2022 WL 17303830, at *3 (E.D.N.Y. Nov. 1, 2021) ("The sheer number of judges who, when presented with this statute, have diverged in their interpretations, tells this court that the plain language of Title III of the

ADA is ambiguous as to whether stand-alone websites are covered entities under the statute."); *see also Del-Orden v. Bonobos, Inc.*, No. 17 Civ. 2744 (PAE), 2017 WL 6547902, at *8 (S.D.N.Y. Dec. 20, 2017) ("[t]he statutory text … of the [ADA] does not cleanly resolve whether Title III applies to commercial websites."). "If the text of a statute is ambiguous, we must look to the statute as a whole and construct an interpretation that comports with its primary purpose and does not lead to anomalous or unreasonable results." *See Connecticut ex rel. Blumenthal v. U.S. Dep't of Interior*, 228 F.3d 82, 89 (2d Cir. 2000).

Congress' intent in adopting the ADA was to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). It is evident that Congress intended to "integrate [the disabled] into the economic and social mainstream of American life," and that Congress expected the statute to adapt as technology advanced. *See Romero v. 88 Acres Foods, Inc.*, 580 F. Supp. 3d 9, 20 (S.D.N.Y. 2022). If the statute were interpreted narrowly to preclude the "vast world of Internet Commerce" from being considered a place of "public accommodation," Congress' purpose in adopting the ADA would be frustrated. *See Del-Orden*, 2017 WL 6547902, at *9; *see also Pork King Good*, 2023 WL 3293639, at *4 (holding that it would be an anomalous result for disabled people to be barred from accessing the growing online-only providers of goods and services).

For these reasons, the Court holds that the website is a place of public accommodation within the meaning of the ADA. Thus, Guerrero has sufficiently alleged discrimination upon which relief can be granted under the ADA and the NYCHRL. *See Barlean's Organic Oils,* 2022 WL 17156838, at *4 (concluding that "because the NYCHRL is more protective than its state and federal counterparts, a claim is automatically stated under the NYCHRL if it is stated under the federal and state statutes"). Accordingly, Ellusionist's motion to dismiss is DENIED.

### B. Relief Sought

Ellusionist argues that Guerrero is not entitled to recover civil penalties, fines or punitive damages under the NYCHRL for two reasons: (1) civil penalties and fines are paid to the city, not to a private plaintiff, and (2) Guerrero's case does not meet the high bar for obtaining punitive damages, which requires more than mere negligence. Doc. 25 at 18; *see also* N.Y.C. Admin. Code § 8-127(a). Guerrero contends she is entitled to damages because she did not bring this claim under § 8-127(a), but rather under § 8-502(a).[2] Doc. 29 at 19. "A motion to dismiss is addressed to a 'claim'—not to a form of damages." *See Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 301, 318 n.5 (S.D.N.Y. 2010). Because damages are not an independent cause of action, a motion to dismiss these damages is "procedurally premature." *See Pork King Good*, 2023 WL 3293639, at *4. Therefore, Ellusionist's motion to dismiss Guerrero's request for monetary relief, including civil penalties, fines, or punitive damages, is DENIED.

Ellusionist also moves to dismiss Guerrero's claim for a declaratory judgment that it violated the ADA and the NYCHRL because it is redundant. Doc. 25 at 19. A claim is redundant when it seeks the same relief sought in other causes of action. *Pork King Good*, 2023 WL 3293639, at *4 (quoting *Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 249 (S.D.N.Y. 2006)). Count III of the FAC only adds one more allegation than those in Count I and II, and is essentially a reiteration of the same allegations set forth in Count I and II. Doc. 21 ¶ 55. Accordingly, the claim is redundant and Ellusionist's motion to dismiss Count III is GRANTED. *See Kleeberg v. Eber,* No. 16 Civ. 9517 (LAK) (KHP), 2020 WL 4586904, at *18 (S.D.N.Y. Aug. 10, 2020), *on reconsideration in part*, No. 16 Civ. 9517 (LAK) (KHP), 2021 WL 1164205 (S.D.N.Y.

---

[2] Section 127(a) states that "any civil penalties recovered pursuant to *this chapter* shall be paid into the general fund of the city." N.Y.C. Admin. Code § 8-127(a) (emphasis added). Section 502(a) states that "any person claiming to be a person aggrieved by an unlawful discriminatory practice as defined in chapter 1 of this title … shall have a cause of action in any court of competent jurisdiction *for damages*, including punitive damages …." N.Y.C. Admin. Code § 8-502(a) (emphasis added).

8

Mar. 25, 2021) (dismissing a claim for declaratory judgment that relied on the same legal theories and sought the same relief as a separate count).

## IV.   CONCLUSION

For the foregoing reasons, Ellusionist's motion to dismiss for failure to state a claim under the ADA and the NYCHRL is DENIED.  Ellusionist's motion to dismiss for failure to establish a claim for damages under the statutes is DENIED and the motion to dismiss Count III is GRANTED.  Ellusionist is directed to answer the complaint by June 27, 2023.  The Clerk of Court is respectfully directed to terminate the motion, Doc. 24. It is SO ORDERED.

Dated:   June 6, 2023
         New York, New York

EDGARDO RAMOS, U.S.D.J.